IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GREGORY LAWSON and BOBBY WELLS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  1:09cv609-WHA-WC |
| | ) | (WO) |
| KFH INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Defendant

KFH Industries, Inc. ("KFH") (Doc. #67).  The Plaintiffs, Gregory Lawson ("Lawson") and

Bobby Wells ("Wells," collectively,"Plaintiffs"), filed a Complaint in this case alleging (1)

disparate treatment of Plaintiffs on the basis of race, under 42 U.S.C. § 1981 (Count I); (2)

disparate treatment of both Plaintiffs on the basis of race and Lawson also on the basis of gender

under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (Count II).  For the reasons to

be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . .

the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. <u>FACTS</u>

The submissions of the parties establish the following facts, viewed in a light most favorable to Plaintiffs, the non-movants:

**A.       KFH Begins Operations and Hires Plaintiffs**

KFH is a corporation that makes fire hoses.  KFH operates a fire hose production plant in Dothan, Alabama.  One of KFH's leaders is Robert Gourlay ("Gourlay") who served as KFH's Vice President at all relevant times in this case.

Lawson, an African-American male, was hired in June 19, 2006.  His role, at the time, was broad: to help get KFH's new plant in Dothan up and running.  Wells, an African-American male, was hired on July 27, 2006, to work in the weaving department as a laborer.

Once KFH's plant became operational, Lawson was promoted to supervisor of the hose assembly department.  Wells was also promoted to supervisor of the weaving department. Shortly thereafter, Lawson was put in charge of the hose testing and shipping departments.

**B.       KFH Hires Terry Lavin and the DeRosiers**

On August 8, 2007, KFH hired Terry Lavin ("Lavin"), a white male, who was married to Gourlay's stepdaughter.  Lavin was hired to be Lawson's lead man in the shipping department, despite the fact that Lawson currently had an assistant, Michael Dawson ("Dawson"), an African-American male who Lawson believed was capable of being Lawson's lead man.  Lavin did not have any industry experience, when he was hired.  Nevertheless, immediately upon being hired, Lavin received an office and computer, and was paid $14.50 per hour.  At this time,

3

Lawson was only paid $10.50 per hour and did not have an office or computer, despite repeated requests for a computer.

In April, 2008, KFH hired Louis DeRosier and his wife, Maria DeRosier.[1]  The DeRosiers are black Haitian immigrants.  Louis DeRosier was hired to become the new Production Manager, and Lawson was required to report to him.  In their briefs, Plaintiffs expressed doubt over what Maria DeRosier was hired to do, though KFH asserted that Maria DeRosier was hired to be in charge of quality control and run a laboratory.

**C.      Company Policy on Injuries and Drug Testing**

At KFH, all employees who suffer an on-the-job injury that requires outside medical treatment are required to take a drug test.  Gourlay Dep. at 68:22-69:5, 78:20-23; Lawson Dep. at 61:15-22.  If an employee fails the drug test, the employee is supposed to be terminated.  Wells Dep. at 34:11-14.  However, Gourlay stated in his deposition that if an employee refuses medical attention, KFH does not require that the employee be taken to the hospital against his will. Gourlay Dep. at 82:17-23.  Lawson further stated that Gourlay told him that if an employee refused medical attention, the employee's supervisor should write up the accident in an incident report, but could not force the employee to receive medical attention.  Lawson Dep. at 60:1-15.

**D.      The Termination Event**

---

[1]Plaintiffs refer to Mrs. DeRosier as "Maria" and KFH refers to her as "Marie."  The court will refer to Mrs. DeRosier as "Maria DeRosier" based on the name she used in her deposition.  Maria DeRosier Dep. at 6:21-22.

4

On April 12, 2008, about a week after KFH hired the DeRosiers, employees were working an overtime shift on a Saturday.  One of the workers on duty was Stewart Corbitt ("Corbitt"), an African-American employee in the shipping department.  Corbitt was supervised by Lawson and DeRosier.  Corbitt was not an acquaintance or friend of Lawson or Wells outside of work.

While working on April 12, Corbitt loudly exclaimed that he had cut himself.  Louis DeRosier approached Corbitt and looked at the cut on his finger.  Louis DeRosier and Corbitt then went into the restroom to put a band-aid on Corbitt's finger.

Wells was not in the area at the time that Corbitt injured himself, because he did not work in the shipping department.  However, shortly after Corbitt cut himself, Wells walked by the shipping department on his way to lunch.  He then noticed Louis DeRosier, Lawson, and Corbitt standing in the hall near the restroom.  He saw Corbitt's cut, which, at the time, was not bleeding.

Plaintiffs and KFH dispute what happened at this time.  Plaintiffs assert that Corbitt requested some peroxide to clean his cut, and upon discovering that KFH did not have any available, Louis DeRosier sent Corbitt home so he could clean the cut himself.  Then, according to Plaintiffs, Louis DeRosier asked Lawson to write up an incident report.  On the other hand, Defendants assert that Louis DeRosier ordered Lawson fill out an incident report and to take Corbitt to the hospital to be treated and receive a drug test.

Corbitt declined medical treatment.  Wells Dep. at 45:14-17; Lawson Dep. at 59:1-6. Lawson then began filling out incident reports in the break room.  He asked Wells for help filling

out one of the reports because Wells had more experience dealing with worker's compensation issues than Lawson.

Andy Stokes ("Stokes"), a white male and longtime KFH employee, walked into the break room and asked what happened.  Upon learning that Corbitt went home without going to the hospital, Stokes told Lawson to call Corbitt and get him to come back to work.  Lawson called Corbitt, and told him to return to work.  Louis DeRosier claimed that, during this call, Lawson passed the phone to DeRosier, and Corbitt told DeRosier that he had taken Tylenol No. 3 and would be unable to pass a drug test.  Pl.'s Ex. 10; DeRosier Dep. at 104:1-13.

Stokes told Corbitt to go to the hospital, and Corbitt left to go to the hospital alone. Stokes called the hospital and told them that Corbitt should be drug tested, however, Corbitt was not drug tested during his visit to the hospital.

Louis DeRosier then contacted Gourlay, who was out of town, and advised him of the incident.

**E.      Termination Meeting**

At some point between April 12 and April 15, 2008, KFH conducted an investigation to determine whether any wrongdoing occurred with respect to Corbitt's injury.  The investigation consisted of reading the incident report and obtaining witness statements from (1) Rick Scarpelli ("Scarpelli"), a white male employee of U.S. Coupling, a corporation that operated in the same Dothan plant as KFH; (2) Stokes; and (3) Louis DeRosier.  No statements were taken from Lawson or Wells.

6

Scarpelli's statement read, in pertinent part, that "[Scarpelli] observed Greg Lawson, Bobby Wells, and Stewart Corbitt standing by the ladies [sic] bathroom.  Bobby Wells looked up and saw Rick was heading toward them and brought this to Greg Lawson's attention . . . and [Lawson] said something to Stewart Corbitt.  Stewart Corbitt jumped and hurriedly walked to the time clock, punched out and left the premises."  Pl.'s Exs. 13, 14.

Stokes's statement read, in pertinent part:

Upon being informed of the incident, Andy [Stokes] immediately went to the break room and entered acting as if he had no knowledge of the events that had just occurred. . . . He asked [Lawson] who was injured, and he replied that Stewart Corbitt had cut his finger.  He asked Greg Lawson and Bobby Wells where Stewart Corbitt was so I could look at his injury to decide if he needed medical treatment. Greg Lawson and Bobby Wells stated that it was only a minor cut, but he had gone home to clean it up and stop the bleeding, and that it was bleeding badly. [Stokes] said to Greg Lawson and Bobby Wells that it must not be a minor cut if he had to leave work, and that he needed to look at the injury . . . . [and told Lawson] to call Stewart Corbitt and have him return to work for me to look at the injury. . . .

[Upon Corbitt's return, Stokes] observed that the cut was severe in nature and that he required immediate medical attention.

Pl.'s Exs. 13, 14.

Louis DeRosier's statement read, in pertinent part:

Upon learning of the incident, Louis arrived at the scene and asked Greg Lawson what happened and Greg Lawson informed the [sic] Stewart Corbitt had cut his finger.  When asking Stewart Corbitt he replied that he had just a small cut and needed a band-dage [sic].

One hour later Stewart called Greg to say he had taken Tylenol 3, Greg handed the phone to Louis who told Stewart that he couldn't talk about this and we would need to address this after the drug test results were received.

Pl.'s Exs. 13, 14.

The investigative report concluded: "the actions taken by both Greg Lawson and Bobby Wells was [sic] a blatant attempt to cover up a severe injury to an employee, and misguide

company management through their actions and version of events.  This appears to have been done to avoid [sic] Stewart Corbitt from taking a drug test because of his injury.  Stewart Corbitt received 10 sutures to his finger which could not have been mistaken for a minor cut[.]"  Pl.'s Exs. 13, 14.

On April 15, 2008, three days after Corbitt's injury, KFH called a meeting with Plaintiffs. At the meeting, attended by Plaintiffs, Gourlay, DeRosier, and Stokes, Gourlay told Plaintiffs that they were being terminated for not sending Corbitt to the hospital.[2]  Immediately after the meeting, Louis DeRosier announced that Lavin would take Lawson's position, as opposed to Dawson, Lawson's assistant.  Wells attempted to explain to Gourlay that he did nothing wrong, but Gourlay told him "you were in the wrong place at the wrong time."  Wells Dep. at 98:12-23. Maria DeRosier later took Wells's job.  Significantly, Gourlay stated in an affidavit that Louis DeRosier was the person who made the decision to terminate Plaintiffs, and that Gourlay "would support his decision either way."  Def.'s Ex. 2.

About two weeks after Plaintiffs were terminated, Corbitt took a drug test, tested positive, and was terminated.

## IV.  **DISCUSSION**

Plaintiffs have brought disparate treatment claims against KFH.  Lawson alleges that he was discriminated against on the basis of his race, African-American, in violation of Title VII

---

[2]KFH claims that "Gourlay explained that [Plaintiffs] were being terminated for failing to take Stewart Corbitt to the hospital as instructed by Louis DeRosier."  Def.'s Mem. Br. in Support of Mot. for Summ. J. at 16.  None of KFH's citations to the record supports the proposition that Gourlay said Plaintiffs disobeyed Louis DeRosier's instructions at this meeting.

and § 1981. Wells alleges that he was discriminated against on the basis of both race, African-American, in violation of Title VII and § 1981, and gender, in violation of Title VII.

KFH moves for summary judgment on two grounds. First, KFH asserts that Wells has failed to exhaust his administrative remedies with respect to his Title VII race discrimination claim. Second, KFH asserts that it is entitled to summary judgment on the merits of the Title VII and § 1981 race discrimination claims of both Plaintiffs, and on Wells's Title VII gender discrimination claim.

## A.    Exhaustion of Administrative Remedies

KFH first contends that it is entitled to summary judgment on Wells's Title VII race discrimination claim because Wells failed to exhaust administrative remedies with respect to this claim.[3]

Prior to filing a Title VII lawsuit, "a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge." *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996) (citing *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. Unit B 1982)). If the plaintiff receives notice of his or her right to sue, the plaintiff may then bring a judicial complaint, but that complaint "'is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"

---

[3]Section 1981 claims do not require administrative exhaustion. *Caldwell v. Nat'l Brewing Co.*, 443 F.2d 1044, 1046 (5th Cir. 1971) (stating that a plaintiff "has an independent remedy under § 1981 without respect to exhaustion under Title VII"). In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

*A.M. Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (citing *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994), *overruled on other grounds*, *Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003).

However, under the single-filing rule, "if one plaintiff, in a multi-plaintiff, non-class action suit, has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement." *Id.* at 1333 (quoting *Forehand*, 89 F.3d at 1565 n.8) (internal quotation marks omitted).

Lawson filed an EEOC charge that alleges racial discrimination identical to what Lawson and Wells both allege in this case. Therefore, under the single-filing rule, Wells did not need to file his own EEOC charge to satisfy the exhaustion requirement, and the exhaustion requirement poses no bar to Wells's claim.

**B.     Disparate Treatment**

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). The critical element in establishing wrongful discrimination in violation of Title VII is discriminatory intent. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Such discriminatory intent can be established through (1) statistical proof of a pattern of discrimination; (2) direct evidence of discrimination, which consists of evidence that, if believed, would prove the existence of discrimination without inference or presumption; or (3) circumstantial evidence of

discriminatory intent using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

Section 1981 entitles all persons in the United States to have the "same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." Discrimination claims based on rights established under § 1981 are analyzed under the same standards of proof and employ the same analytical framework as claims based on Title VII. *See Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009).

Where, as here, Plaintiffs seek to prove intentional discrimination on the basis of race and gender by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas*. Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

1.      *Legitimate, Nondiscriminatory Reason*

For the purposes of this Motion, the court assumes, without deciding, that Plaintiffs have satisfied their prima facie case as to all of their race and gender discrimination claims.

Thus, the burden now shifts to KFH to articulate a legitimate nondiscriminatory reason for terminating Plaintiffs.  This burden is "exceedingly light" and the employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof."  *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (internal quotation marks omitted).

In this case, KFH has met its burden by proffering the following reasons for terminating Plaintiffs: (1) Plaintiffs "disrespected and questioned [Louis DeRosier's] authority by failing to follow a specific directive that he gave them to take Stewart Corbitt to the doctor following his on the job injury;" and (2) Plaintiffs "attempted to protect Stewart Corbitt from being drug tested" so he would not be fired, by sending him home instead of to the hospital.  Def.'s Mem. Br. in Support of Mot. for Summ. J. at 31.

2.      *Pretext and Ultimate Burden*

Because KFH has articulated two legitimate, nondiscriminatory reasons for its decision to fire Plaintiffs, the burden shifts to Plaintiffs to show that these reasons were a pretext *for discrimination*.

12

I.      Falsity of KFH's Reasons

To demonstrate pretext, a plaintiff must show that the employer's offered reason was not

the true reason for its decision, "either directly by persuading the court that a discriminatory

reason more likely motivated the employer or indirectly by showing that the employer's

proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d

1276, 1289 (11th Cir. 2005) (citing *Burdine*, 450 U.S. at 256) (quotation marks omitted).

Furthermore, the plaintiff must "produce sufficient evidence for a reasonable factfinder to

conclude that each of the employer's proffered nondiscriminatory reasons is pretextual."

*Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (*en banc*).

Plaintiffs assert that KFH's articulated reasons are pretext.  Plaintiffs claim that

DeRosier, not the Plaintiffs, sent Corbitt home after Corbitt's injury.  Lawson, Wells, and Corbitt

all stated in their depositions that Louis DeRosier, not Lawson or Wells, sent Corbitt home after

Corbitt was injured.  Lawson Dep. at 65:1-10; Wells Dep. at 63:1-12; Corbitt Dep. at 13:10-14.

Additionally, the witness statement that Louis DeRosier gave just prior to Plaintiffs' termination

says nothing about Plaintiffs disobeying a direct order; it only says that DeRosier asked Lawson

to conduct an accident report.  Doc. # 74-12.  Moreover, even KFH's internal investigation

reports say nothing about Lawson or Wells disobeying a direct order, but merely conclude that

Lawson and Wells were trying to "cover up a severe injury to an employee . . . to avoid [sic]

Stewart Corbitt from taking a drug test because of his injury."  Pl.'s Exs. 13, 14.

KFH responds that Louis DeRosier stated, in his deposition, that Plaintiffs failed to

follow his orders.  *E.g.* DeRosier Dep. at 138:13-23.  Additionally, Gourlay stated, in his

13

deposition, that Louis DeRosier told Gourlay that he had told Lawson and Wells to send Corbitt home.  Gourlay Dep. at 70:10-21, 71:5-12.

The court concludes that there is at least a genuine issue of fact as to whether KFH's proffered reasons for termination were the truth.  A reasonable jury might find, based on the evidence presented and a consideration of credibility, that Louis DeRosier was actually the one who sent Corbitt home.  If a jury were to find that fact, it could rationally disbelieve both of KFH's proffered reasons for terminating Plaintiffs.

ii.     Ultimate Burden

However, a plaintiff does not avoid summary judgment merely by proving that the employer's proffered legitimate nondiscriminatory reasons are false.  It is not enough that the employer's proffered reasons are a pretext for *something*.  Rather, they must be a pretext *for discrimination*.

In the 1993 case of *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), the Supreme Court rejected the contention that mere establishment of a prima facie case, together with a finding that the defendant's articulated non-discriminatory reason was false, compelled a finding for the plaintiff.  *Id.* at 510-11.  The Court held that "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination," but does not *compel* judgment for the plaintiff, because the plaintiff still bears the "ultimate burden of persuasion."  *Id.* at 511.  Noting that the earlier-articulated *Burdine* analysis holding that a plaintiff is required to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not the true reasons, but were a pretext for discrimination" the

14

Court stated that "a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* at 515 (emphasis in original). "It is not enough, in other words, to *dis*believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519 (emphasis in original).

That case was followed by *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). There, the Supreme Court rejected the contention that *St. Mary's Honor Center* required a plaintiff who proves that an employer's asserted justification is false to come forward with sufficient evidence of discrimination *in addition to* the evidence which established the prima facie case in order to prove liability. *Id.* at 148-49. A plaintiff may, or may not, be able to prevail on only the prima facie case and proof of falsity of the asserted nondiscriminatory reason advanced by the defendant; the determination must be made based on all the evidence. *Id.*

So, the court now must determine whether a reasonable jury, if it believed all of the Plaintiffs' evidence now before the court, could conclude that the Plaintiffs were terminated intentionally because of their race and/or gender.

3.      *The Evidence*

I.      Wells's Gender Discrimination Claims

The court first considers Wells's gender discrimination claims.

In this case, Wells offers, in addition to the fact that he was replaced by a female and KFH's asserted reasons for his termination were false, the assertions that his replacement, Maria DeRosier, (1) was unqualified; (2) was hired into a fictitious role of running a laboratory despite

the fact that KFH has no laboratory staff; (3) was hired to be in charge of quality control despite the fact that Louis DeRosier is in charge of quality control; (4) was paid more than Wells despite Wells's seniority; and (5) replaced Wells immediately after Wells was terminated.  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7-8.  None of these facts suggest that gender motivated Wells's termination.  At most, KFH's favorable treatment of Maria DeRosier show nepotism in favor of Louis DeRosier's wife, and nepotism is not a basis for a Title VII claim.  There is no evidence of gender-based comments by decisionmakers or disparate treatment of other employees on the basis of gender.

The evidence pointed to showed that Maria DeRosier spoke Spanish and Wells did not, and KFH had a number of Spanish-speaking employees.  In his deposition, Wells explained his belief as to the reason for his termination as follows:

> Q.      All right.  Why do you believe you were terminated?
> A.      I believe I was terminated because Louis wanted to put his wife in my -- in my spot.  That he felt that he needed somebody that can speak Spanish in my spot, and he felt a woman being present in that spot to where she might can get more things done from the Spanish people.
> Q.      So it's your impression that Louis felt like his wife could handle the job better than you could?
> A.      I felt – my impression was that Bob and Andy and Louis thought that -- yeah, that she probably can handle the job more better than I can handle it.
> Q.      So that's why you believe you wound up getting terminated?
> A.      Yes, sir.
> Q.      Okay.  What is it that makes you believe that?
> A.      That she got my job in three days.

Wells Dep. at 100:2-23.  Wells went on to say:

> A.      The reason why I thought this was that she -- that she was a family member of Louis, and that Bob and them were family, that they needed to have family members in those positions.

Wells Dep. at 101:22 - 102:2.

16

To the extent that any of this testimony might be offered as favorable to Wells, it is insufficient to overcome summary judgment, because it is based solely on Wells's belief. *See Blount v. Ala. Coop. Extension Serv.*, 869 F. Supp. 1543, 1553 (M.D. Ala. 1994) (citing *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 597 (11th Cir. 1987)) ("[T]he plaintiff's allegations, opinions, and conclusory statements are insufficient to create an issue of fact as to show intent to discriminate."). But for the most part, this testimony works against Wells, as he is expressing his own belief in a different motive than gender discrimination.

In sum, there is simply no evidence before the court from which a reasonable jury could find that Wells was intentionally discriminated against on the basis of gender. Accordingly, summary judgment is due to be GRANTED on Wells's Title VII gender discrimination claim.

ii.     Plaintiffs' Race Discrimination Claims

The remaining claims are Plaintiffs' Title VII and § 1983 race discrimination claims. In support of these claims, Plaintiffs refer to a variety of evidence, but this evidence does not show that the decisionmaker, Louis DeRosier, was motivated by race in deciding to terminate them.

Some of the evidence that Plaintiffs have submitted is inadmissible hearsay. Lawson stated in his deposition that "a co-worker told Lawson that he overheard Scarpelli, Lavin and Stokes plotting to get Lawson and Wells fired." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6. Lawson stated in his deposition that "Scarpelli told Michael Dawson that Vice President Robert Gourlay referred to Lawson as a 'thug' and a 'N -----.'" Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6. Additionally, Lawson stated that Dawson told him that "Scarpelli stood at the time clock

telling the other employees that he had gotten rid of Lawson and Wells." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6.

KFH has objected to the use of the above statements, contending that they are hearsay. Plaintiffs make no response to KFH's hearsay objection. The court concludes that the above statements are inadmissible. Even if they were admissible, however, they are not evidence of racial animus on the part of the decisionmaker, DeRosier.

Plaintiffs have also presented circumstantial evidence that is irrelevant. Plaintiffs have spent some time in their brief implying that Lavin received favorable treatment at Lawson's expense because Lavin was married to Gourlay's oldest stepdaughter. This evidence is irrelevant, because it shows nepotism, not racism, and nepotism is not actionable under Title VII or § 1981. If anything, this evidence weakens Plaintiffs' argument by suggesting that the true motivation for Lawson's termination was not racism, but nepotism.

Plaintiffs have also presented other circumstantial evidence suggesting the existence of racism at KFH. First, Lawson stated in his deposition that he "heard Scarpelli refer to African-Americans as 'N -----' and also heard Stokes use racial slurs toward Wells and other African-American employees," though he could not present any specific examples of any racial slurs. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6. Second, Wells stated that "Stokes 'didn't like blacks' or Latinos . . . [and] that Stokes would curse at the African-American and Latino employees, but did not seem to treat white employees the same way." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6. Third, Lawson also stated in his deposition that co-workers told him, prior to his termination, that "'the white boy' (Lavin) is going to have your job." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6. Fourth, Plaintiffs stated that Lavin was paid more than Lawson at the

time that Lawson was hired, and also received an office and computer before Lawson, despite the fact that Lawson was Lavin's superior.  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5-6.

The above evidence circumstantially suggests that racism may have existed in some at KFH.  However, because this is a disparate treatment case, such circumstantial evidence is only relevant to the extent that it shows the decisionmaker who terminated Plaintiffs was motivated by racism.  *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) ("When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker.") (citing *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1105 (11th Cir. 2001)).

In this case, Gourlay submitted an affidavit that states that Louis DeRosier was the decisionmaker who decided to fire Plaintiffs.  Gourlay Aff. at 3.  Plaintiffs do not directly dispute this point, much less cite admissible evidence showing that Louis DeRosier was not the decisionmaker.  Accordingly, the above evidence is only relevant if it shows *Louis DeRosier* was motivated by racism in deciding that Plaintiffs should be terminated.  However, none of this evidence shows that Louis DeRosier, who had been with KFH only a week at that time, was motivated by racism or had any racist tendencies.  In fact, the circumstantial evidence discussed above occurred prior to the date that Louis DeRosier was hired.[4]

The court notes that Plaintiffs have not contended that Louis DeRosier, the decisionmaker, should be imputed with racist motives of Stokes and Scarpelli under the cat's paw theory of disparate treatment liability.  *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328,

---

[4]Even if the Plaintiffs' evidence were sufficient to make a jury question as to whether Gourlay, rather than DeRosier, was the actual decisionmaker, which it is not, there is no evidence of racial animus on his part.

1332 (11th Cir. 1999).  However, even under this theory, KFH would be entitled to summary judgment.  Under a cat's paw theory of liability, "causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee.  In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus."  *Id.*  In this case, no evidence suggests that Louis DeRosier solely relied on Stokes and Scarpelli's witness statements or on any recommendations from them in terminating Plaintiffs.  Rather, Louis DeRosier was himself a witness to the events leading to Plaintiffs' terminations, and thus it cannot be said that he did not conduct any independent investigation of the events surrounding Corbitt's injury.

As to DeRosier himself, Plaintiffs noted that Lavin, who had recently been hired, was promoted to Lawson's position after Lawson was terminated, instead of Dawson, who was Lawson's African-American assistant who had seniority over Lavin and had been trained by Lawson.  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6-7.  Plaintiffs have presented evidence showing that Plaintiffs' termination decision was made merely through a consideration of the injury report signed by Corbitt and witness statements taken from Louis DeRosier, Scarpelli, and Stokes.  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 12 n.4.  And, Plaintiffs presented evidence that after Lawson was terminated he and DeRosier spoke on the telephone and DeRosier told Lawson that he was terminated so that Terry Lavin could take his job.  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7.  This, however, is not sufficient, given the totality of the evidence, for a reasonable jury to conclude that DeRosier terminated the Plaintiffs because of their race.

**C.      Conclusion**

The Plaintiffs have succeeded in creating an issue of fact as to the truthfulness of KFH's asserted reasons for their discharge.  To create a genuine issue of *material* fact, however, Plaintiffs must present enough evidence that a reasonable jury could find that the true reason for KFH's termination decision was race or gender.  There is not sufficient evidence to support a finding of gender discrimination against Wells.  As to race, while there may be evidence that some employees at KFH harbored racist tendencies, there is no evidence sufficient to find that Louis DeRosier, the decisionmaker, was motivated by racial discrimination when he terminated Plaintiffs, nor can the alleged racist tendencies of some KFH employees be imputed to Louis DeRosier.  Therefore, summary judgment is due to be GRANTED as to Plaintiffs' race and gender discrimination claims.

**V.  <u>CONCLUSION</u>**

For the foregoing reasons, the Motion for Summary Judgment is GRANTED to KFH as to all of Plaintiffs' claims.

Done this 24th day of January, 2011

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE